## Case No. 13,576a.

STURGIS v. The JOSEPH JOHNSON.

[26 Betts, D. C. MS. 74.]

District Court, S. D. New York. 1860.

PROCTORS' FEES IN ADMIRALTY — DISCRETIONARY ALLOWANCES.

[1. The rate of compensation of proctors in admiralty, like that of attorneys and solicitors in common-law and equity courts, is controlled by the statutes in force at the time the right to costs accrues, or at the time of taxation.]

[2. The act of February 26, 1853 [10 Stat. 161], regulating costs, fees, etc., in the federal courts, took away the power of the district court sitting in admiralty to tax, at any greater rate than those prescribed, costs for legal services, whether rendered as proctors eo nomine, or as "counsel," or otherwise; and those courts no longer have power to award an additional sum to libelants, in the court's discretion, under the name of a counsel or proctor's fee.]

[This was a libel by Russell Sturgis against the steamboat Joseph Johnson (John A. Parks, claimant), to recover for salvage services. The court heretofore awarded salvage in the sum of $1,000. Case No. 13,576. The cause is now heard on motion of libellant's proctors for the allowance of a proctor's fee, to be paid by the claimants.]

BETTS, District Judge. The action in the above-entitled cause was prosecuted in this court on a claim of salvage, and upon full hearing, pleadings, and proofs in the cause the court decreed that the libellant recover $1,000 salvage, with costs to be taxed. The court is now moved, on reading the affidavit of the libellant, together with a notice in writing in the name of his proctors, addressed to the proctors of the claimant in the action (both papers filed together in court June 27, 1860), that a reasonable and proper counsel fee be allowed to the proctors for the libellant in this cause, to be paid by the claimant herein. These papers assume two positions,—one of fact, and the other of law. First, that it is within the cognizance of the court before whom the trial in question was had that the services rendered by the proctors in conducting the prosecution, and the expenditures incurred by the libellant in the progress of the suit, are largely beyond all recompense secured the libellant by the salvage reward adjudged him for the services bestowed by him in the case, the taxable costs allowable to him for attendance of witnesses, the preparation of the cause out of court, and the compensation of his counsel in managing the litigation from its inception to the close; and, secondly, that he is entitled by law to apply to the court, and have awarded him by order, under the name of counsel fees, such sums of mon-

ey, beyond the salvage compensation decreed to him upon the case made out on the trial, as will make up the deficiency of damages ordered in the cause. The judgment on this motion will be limited to the inquiry whether the relief asked for can be granted merely as an augmentation of costs, allowable at the discretion of the court. If the libellant failed to recover the full amount of compensation he was entitled to recover upon the proofs on trial, the misjudgment of the court in that award should be corrected by appeal. There is no doubt of full authority in the appellate court to correct any undervaluation of those services made by the inferior tribunal. It seems that the court was not convinced by the testimony, or reasonings upon it, given upon the hearing, that the libellant had shown himself justly entitled to a compensation over the sum of $1,000, together with taxable costs, and the object of the present application is, under the appellation of counsel fees, to have the court grant a further remuneration to the libellant. I do not enter into an examination of the foundation of the usages in admiralty courts to impose additional damages, extraneous to actual recoveries, on the subject-matter of litigation, under the denomination of counsel fees, because it appears to me the authority has always been exercised under the notion that in the particular of giving costs in admiralty causes, especially in maritime torts heard in prize, or on the instance side of the court, the discretion of the court was unlimited by any legislation or rule of practice. The Appolona, 9 Wheat. [22 U. S.] 379; Carter v. Insurance Co., 3 Pet. [28 U. S.] 319.

The substantial question in the present case is whether it is longer left in the United States courts, at the discretion of the court, to allot costs between the parties, and if now the power is not positively limited or regulated by law. It may be remarked, in this connection, that the practice in the federal courts of awarding ad libitum recompenses to one litigant party, at the expense of the other, under the name of counsel fees, never seems to have been governed by any principle of jurisprudence which could be invoked as a rule to guide a subsequent appropriation. The cases above cited illustrate the position. One is a bald grant of $500 counsel fees, in the cause; the other, with somewhat fuller specification, as "counsel fees at Charleston and Washington, $1,-150." Neither case affords any instructions pointing out criteria proper to be observed in measuring donations of that character, but may be inflated or circumscribed, according to the impulse of the presiding judge.

I am of the impression that congress adopted the existing legislation in respect to costs to obviate the uncertainties attending that practice, and in some degree, also, the mischief very liable to follow so indefinite a method of bestowing gratifications upon suitors at the heel of a litigation. Congress has permitted the entire subject of costs to rest in a very dubious and obscure condition from the organization of the government. Betts Adm. Prac. p. 120; Ben. Adm. Prac. § 550; 2 Conk. Adm. Prac. c. 14, pp. 777, 778. The ruling idea had palpably been that costs comprised an element of positive charge and recovery between suitors; but the solicitude to make the mode of apportioning costs and that of levying them conform in the United States courts to the special provisions in state laws, and the usages of state courts, resulted in destroying all unity in either respect in administering the law as a federal system, and, indeed, in affording practical utility to the principles. The topic in relation to the correlative law of costs in the federal and local courts of this state in causes at common law, criminal and equity jurisdiction, has been ably examined and commented upon by the presiding judge of this circuit, Oct., 1851 [District Attorney's Fees. Fed. Cas. Append.], and May, 1852 [Costs in Civil Cases, Fed. Cas. Append.]; and his remarks in those decisions apply with equal force and justness to the indefinite and unsatisfactory condition of the subject in the court of admiralty, attended with the further discrimination that the latter court has never been but temporarily subject to regulation by state law or usages in regard to fees since the adoption of the constitution of the United States. Betts, Adm. Prac. p. 120, § 21; Ben. Adm. Prac. § 550; 2 Conk. Adm. Prac. c. 14; Dunl. Adm. Prac. 102, 103. Its proceedings were originally declared by congress (Sept. 29, 1789) to be according to the course of the civil law (1 Stat. 93, § 2), and, by an after amendment of that law (1 Stat. 276, § 2), restricting the character of the jurisdiction of the admiralty courts to be "according to the principles, rules, and usages which belong to courts of admiralty, as contradistinguished from courts of common law," and repealing, in other respects, the totality of the act of September 29, 1789 (Act May 8, 1792, § 8), the state laws or usages would rarely supply any proceedings or analogies of aid in the practice of admiralty courts. By the act of March 1, 1793 [1 Stat. 332], under the title of "An act to ascertain the fees in admiralty proceedings in the district courts of the United States," which continued in force, and by that act and the subsequent act of March 1, 1796 (Id. 451), to the end of the next session following the latter act, the costs which might be taxed or adjudged a counselor or attorney were specifically designated and limited; and, because the act purported to ascertain and fix the fees in admiralty proceedings, it was generally accepted as embracing all practitioners in admiralty. These provisions were revoked, and others, of larger allowance, were substituted, by the act of February 28, 1799 (1 Stat. 625), and in language too explicit to admit of question that the pro-

visions applied to district attorneys alone, not to proctors or advocates of private suitors. Costs, however, were taxed and adjudged to proctors of private suitors in affinity to the tariff of fees enumerated in the statute of 1789, and the allowances specified by congress for similar services to district attornies, when the same services were rendered in private actions; those allowances to district attorneys by congress being adopted by the courts as a reasonable rate of fees and compensation for similar services to advocates and proctors in suits between individuals.

I have not been able to find any act of congress from 1793 to 1847 which assumes to prescribe directly the rate of fees to be adjudged or taxed in actions in rem or personam in which the United States are not directly a party concerned. The supreme court never executed the power in that behalf conferred upon them by, and clearly implied in, the act of congress of August 23, 1842, § 6 (5 Stat. 518). If the act of March 3, 1847, is to be understood as a law absolutely governing costs and expenses between private suitors in proceedings in admiralty against ships and vessels, its provisions can in no way aid the present application, as the manifest purpose of the act is to inhibit attorneys and proctors from recovering the usual rate of taxable fees, instead of clothing the court with power to augment their compensation for services in a suit beyond a standing tariff of taxable costs, or such as may be obtainable under any custom or usage. 9 Stat. 181. In this condition of the law of costs, congress passed the act of 1853, entitled "An act to regulate the fees and costs to be allowed clerks, marshals, and attorneys of the circuit and district courts of the United States, and for other purposes." 10 Stat. 161. I was called upon by an appeal from a taxation of costs to libellants in a suit in rem and personam, prosecuted in this court immediately after the approval of that act (February 26, 1853), to determine the applicability of that statute to the existing practice of the court in allowing counsel fees in favor of the party prevailing in the cause against his opponent.

The principle involved with the questions of taxation arising in that cause was essentially the same presented in this case,—that is to say, whether the court had a discretion to grant, in the name of counsel fees, a money allowance or recompense to the libellants beyond the sum decreed in damages. No formal opinion was drawn up in detail in support of the points ruled in that decision, but, as I shall adhere, in substance, to the judgment then declared, I shall make those conclusions the basis of the present order.

1. The manifest intent and policy of the act were to apply this law of costs to all the inferior courts of the United States, both in public prosecutions in relation to the fees of the law officers of government, and to attorneys and officers of court in private actions.

Such purpose and policy the courts will carry out fairly, and, the act being remedial, it must have a liberal interpretation, so as best to subserve its objects. The doctrine that legislative restrictions to pre-existing fee bills in the state tribunals apply strictly in all courts or cases coming within the purview of the enactment is enforced in the local courts. The rate of compensation is controlled by the statute in force at the time the right to costs accrues, or at the time of taxation. Supervisors of Onondaga v. Briggs, 3 Denio, 173; Brooklyn Bank v. Willoughby, 1 Sandf. 669. This rule is positive in common-law cases, where costs are the creatures of statutory appointment (3 Denio, 173), and the principle equally prevails in equity and admiralty courts, which are supposed to possess an inherent right to award costs, independent of statutory grant. A statute necessarily controls absolutely the rate of fees allowable by usage or express grant in suits prosecuted within the jurisdiction of all the federal courts, because the usage has the power of law only for the reason that it imports the assent of the lawgiver. It accordingly makes no difference that costs in the admiralty courts in their origin were bestowed at the discretion of the courts. That was matter of usage or acquiescence, and never could be regarded as barring or impeding the entire power of the legislature over the subject, or securing to the courts the slightest authority in contravention of the will of the legislative power.

The claim that the act of congress does not limit the compensation or fees to be taxed to counsel, and therefore the court has the same discretion over that matter since the statute, as existed prior to its passage, is obviously untenable, because, the whole subject of fees being under the direction of the legislative authority, a law of general limitation and restriction will be of like efficacy to rescind all allowances of costs transcending its restrictions, as if a specific prohibition of items were enacted, and counsel eo nomine are not known in the admiralty practice. The functions of that office in courts of common law and equity are performed by advocates in the civil and maritime courts, and, in strictness, the grade of advocate is only another denomination of proctor; the latter officer becoming, by his appointment in the early time of the courts, the proxy of the principal party, and in that capacity dominus litis. Clerke, Prac. (by Hall) tits. 7, 8; Betts, Adm. Prac. 9, 11. Dunl. Adm. Prac. p. 72. In the respective forums the attorney and proctor are the stamen of the various orders of practitioners, and are subdivided in name and functions for convenience, or pursuant to the usages of the tribunals in which they practice. Jac. Law. Dict. vide "Attorney," "Proctor," etc. In the act of March 1, 1793, congress evidently regard "the counsellor or attorney in the district court" one and the same person

in allotting fees for the services of the officer in admiralty and maritime proceedings. 1 Stat. 332, § 1; Id. 625, § 4. This is in consonance with the course of the civil law as administered in ecclesiastical, equity, and maritime courts generally, who regard advocates and counsellors of correspondent grades and employments, so far as their duties differ from those of proctors; the former having in charge the law of the case in contestation, and the latter the facts. Woods, Inst. Civ. Law, bk. 4, c. 1, §§ 3, 4; Constetts' Practice of the Spiritual or Ecclesiastical Courts, pt. 2, § 2. Advocates, however, in the latter courts, being primarily assigned rather to the special service of the church, to maintain its property and rights (Crowell's Law Dict.), than to the aid of private suitors. This was the civil-law practice and of all orders of canonical courts, from which the more modern admiralty and maritime course of procedure has been derived. It came into use under various modes of authorization. Officers who stood as representatives of parties litigant therein took the appellations of proxies, promoters, barristers, advocates, etc., almost indifferently, although in origin the class were proxies or promoters, commissioned by some public act in court, or before notaries public out of court. The same agents, with especially like powers, were introduced into courts of law (1 Fitz. N. B. 25c; 1 Reeves, Eng. Law, 13, 4 Reeves, Eng. Law, 169; 3 Bl. Eng. Law, 25; Crabb, Eng. Law, 118, 351, 366; 1 Rich. Prac. K. B. 37) under the name of apprentices, attorneys, barristers, sergeants, advocates, and counselors (Crabb, Eng. Law, § 190), and in the chancery courts as solicitors (Wyatt, Pr. Reg. 305). To all appertained essentially like privileges and powers, and each was rewarded for his services by the party whom he represented, per honorarium, or compulsorily, and by stated fees, or by adequate rates of compensation, to be assessed and adjudged under the supervision of the courts. This cursory allusion to the intermediary men recognized as holding official places almost immemorially in the various courts of justice under the English jurisprudence will be sufficient to indicate the objects within the contemplation of congress when legislating upon the legal rights of those persons in respect to their principals, which the courts are authorized to uphold and enforce upon the footing of the official relationship and acts of these officers in court.

These suggestions will supply a satisfactory clue to the purposes congress had in view in the law in question. It was to regulate the fees and costs to be allowed attorneys in the federal courts. It accordingly places the law of costs to be taxed and assessed therein upon a fixed basis. It names attorneys, solicitors, and proctors. They are the only officers who can institute or defend civil actions in the United States courts. The attorney at common law, the solicitor in

equity, and the proctor in admiralty. They represent their respective classes, and take, in their separate names, the fees appointed and authorized to be taxed against suitors in the several courts, and it is enacted that the same shall be in lieu of the compensation theretofore allowed to those officers, and that no other compensation shall be taxed or allowed, leaving, however, to those officers the right to contract with their employers for further reasonable compensation; and then proceeds to appoint and designate a specific tariff of such costs, and, by the fifth section of the act, repeals and abrogates all laws and regulations incompatible with that act. In my judgment the provisions of the statute in this respect are explicit and imperative. It forbids all taxation of costs other than those enumerated upon its face, and all discretionary allowances are prohibited in unmistakable language. The inhibition covers all claims for the services, and it is of no moment, therefore, whether the person who renders the services officiates as counsel or proctor, if those were to be regarded under this law as distinct officers, and performing different functions in conducting the business of the court. From what has been before stated, however, the term "proctor" in this act embraces counsel or advocates who may represent a suitor in a proceeding in a court of admiralty on the instance side thereof. If that were otherwise, the application in this cause, being in the name of the proctors to the suit, for an allowance to them, as proctors, of a reasonable counsel fee in the cause, the question is precise and definite, whether the officer who has taxable costs assigned him in compensation for his services in the suit can have granted to him an additional compensation in the same capacity, at the discretion of the court. I am clearly of the opinion that he cannot, and the motion accordingly is denied.